## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JASMIN SABLJAKOVIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20-cv-00012-AGF |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the

Commissioner of Social Security finding that, due to medical improvement, Plaintiff

Jasmin Sabljakovic is no longer disabled and thus no longer entitled to disability

insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, or

supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381-

1383f.  For the reasons set forth below, the decision of the Commissioner will be

affirmed.

### BACKGROUND

The Court adopts the facts as set forth in Plaintiff's Statement of Facts (ECF No. 8

at pp. 1-14)[1] and Defendant's Response with Additional Facts (ECF No. 9-1).  Together,

---

[1]     Although Plaintiff did not file his statement of facts as a separate document with numbered paragraphs as required by the case management order (ECF No. 2), he did set forth the facts in a distinct section of his brief with citations to the administrative record. The Court finds the form and substance of the Statement of Facts sufficient to be adopted and incorporated herein.

these statements provide a fair description of the record before the Court.  Specific facts
will be discussed as needed to address the parties' arguments.

       Plaintiff was born on October 15, 1969 and emigrated from Bosnia to the United
States in 1998 with an 8th grade education and no English language skills.  He previously
worked in a hat factory before applying for disability and SSI in 2004, alleging an onset
date of December 31, 2002, stemming from the effects of a traumatic head injury in a car
accident in January 2000.  Tr. 108, 181.  Plaintiff's applications were initially approved
and later extended by a favorable decision dated April 16, 2009, when Plaintiff was
determined disabled due to mental impairments.  Tr. 181-182.  On review in December
2015, a hearing officer determined that Plaintiff was no longer disabled as of August 6,
2015 (the date of state agency examiner's review), due to medical improvements in his
work-related impairments.  Tr. 253-260.  Plaintiff requested a hearing before an
Administrative Law Judge ("ALJ"), who held hearings on July 14 and December 15,
2016, during which ALJ heard testimony from Plaintiff (represented by counsel),
Plaintiff's wife, and a vocational expert ("VE").  After the hearings, the ALJ held the
record open to receive additional medical evidence from Plaintiff and interrogatory
responses from the VE.

       On August 2, 2017, the ALJ issued a decision finding that Plaintiff was no longer
disabled due to medical improvement.  Tr. 201-216.  Plaintiff requested review by the
Appeals Council, which, on September 19, 2018, vacated the decision and remanded the
case with instructions for the ALJ to make a specific finding whether Plaintiff became

disabled again at any point between the end of his last disability (August 6, 2015) and the date of the decision (August 2, 2017), as required by SSR 13-3p.  Tr. 224.

On remand, the ALJ held another hearing on March 3, 2019, at which Plaintiff and a different VE testified, and the evidentiary record was supplemented with Plaintiff's medical records since the prior decision.  Tr. 142-176.  Following that hearing, the ALJ issued a decision dated August 5, 2019, again finding that Plaintiff was no longer disabled as of August 6, 2015, and also finding that he had not become disabled again since then.  Tr. 11-33.  Plaintiff requested review by the Appeals Council, which denied review on November 23, 2019.  Tr. 1-4.  Thus, Plaintiff has exhausted his administrative remedies, and the ALJ's most recent decision stands as the final decision of the Commissioner for this Court's review.

Plaintiff asserts that the ALJ committed reversible error by failing to find that the condition of his knees constituted a severe impairment.  ECF No. 8.  Although the record contains extensive evidence with respect to Plaintiff's other impairments, Plaintiff does not challenge the ALJ's decision in any other respect.  As such, the Court will narrow its discussion to that issue except as warranted for general history and context.

**The ALJ's Decision (Tr. 11-33)**

The ALJ began by noting that the most recent favorable medical decision finding Plaintiff disabled was a determination dated April 16, 2009, which is the "comparison point decision" ("CPD").  Tr. 13.  At that time, Plaintiff had medically determinable impairments of depression and obstructive sleep apnea.  Accounting for these

impairments, Plaintiff had the residual functional capacity ("RFC") to work at all exertional levels but not for a full eight-hour workday.  Tr. 13.

Next, the ALJ found that, since August 6, 2015, Plaintiff had medically determined impairments of degenerative disc disease, depression, obesity, obstructive sleep apnea, and a history of seizure disorder.  Tr. 13.  The ALJ found that Plaintiff's degenerative disc disease, depression, and obesity were severe.  She found the remainder of Plaintiff's impairments non-severe because they did not impose more than minimal work-related functional limitations.  She found that Plaintiff's sudden onset of post-traumatic stress disorder (PTSD) was not medically determinable because there was no diagnosis in the record.  She also found no evidence supporting a medically determinable impairment from a head injury from the 2000 car accident, as a CT scan from 2012 was normal.

The ALJ then reviewed the evidence with respect to Plaintiff's mental impairments and found that Plaintiff did not have any mental impairment, considered singly or in combination, meeting the criteria of listings 12.04, 12.06, or 12.15.  Tr. 13-14.  In making that determination, the ALJ considered the four areas of mental functioning known as "paragraph B" criteria.  She found that Plaintiff had only mild impairments in (1) understanding, remembering, or applying information; (2) the ability to concentrate and maintain persistence and pace; and (3) the ability to adapt or manage himself.  She found that Plaintiff had mild-moderate limitations in interacting with others.

The ALJ found a decrease in the severity of Plaintiff's depression in that he was no longer under treatment, he did not report ongoing symptoms, and his primary doctor assessed his condition as stable.

The ALJ noted that Plaintiff also alleged disability due to breathing problems, heart problems, sleep apnea, and fatigue.  However, Plaintiff had undergone a sleep study and was wearing a CPAP and taking medication to sleep at night and stay awake during the day.  Medical examinations showed clear lungs and a regular heart rate.  Tr. 16.

The ALJ found that Plaintiff's impairments had decreased in severity from the CPD (April 16, 2009) to August 6, 2015, such that that Plaintiff had the RFC to perform "work at all exertional levels except limited to routine, repetitive tasks with occasional interaction with supervisors, co-workers, and the public; work that does not require regular use of [the] English language to learn (i.e., by demonstration) to perform."  Tr. 16.

The ALJ then found that, since August 6, 2015, Plaintiff has continued to have severe impairments of degenerative disc disease, depression, and obesity.  Given those impairments present since August 6, 2015, the ALJ found that Plaintiff had the RFC to perform medium work "except limited to routine, repetitive tasks; no direct interaction with the public; casual and infrequent interaction with co-workers; and occasional interaction with supervisors."  Tr. 17.

In prefacing her evaluation of Plaintiff's impairments, the ALJ noted that she must (1) determine whether medical diagnostic techniques show a medically determinable impairment that could reasonably be expected to produce Plaintiff's symptoms and, if so,

then (2) evaluate the intensity, persistence, and limiting effects of those symptoms on Plaintiff's ability to work.  Tr. 17.

In his function report, Plaintiff stated that he lived in a house with his family and spent his days sitting or lying down; he did not do chores, shop, or prepare meals; he had no hobbies; and he had difficult doing anything (e.g. lifting, bending, standing, reaching, kneeling, remembering, concentrating, understanding).  At the hearing on December 5, 2015, Plaintiff said that he was tired and depressed; he did not like to socialize; he was in a bad car accident and had a shunt in his head; he had PTSD; he wore a CPAP to sleep; his medications were helpful for sleep and mood; he had memory problems; and his wife and daughter worked while he stayed home doing nothing.  Plaintiff reported knee injuries stemming from his car accident, when both legs were broken and hardware was placed in his right knee (and later removed).  Tr. 110-111.  He said he took Motrin as needed.  Plaintiff said that he could only stand for five minutes due to back pain.  At the third hearing on remand in March 2019, Plaintiff again reported problems with his knees but also testified that he went for walks on a regular basis.  Tr. 154-155, 151.  The ALJ noted that, when pressed, Plaintiff could not articulate any specific information about his physical limitations.  Tr. 152-153.

The ALJ found that, although Plaintiff's impairments could reasonably be expected to produce of his alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.

The ALJ then chronicled Plaintiff's treatment records from April 2015 to March 2019, most of which reflect treatment for mental health and sleep issues not germane to the Court's analysis here.  Tr. 19-29.  To summarize, Plaintiff was seen by various providers in April, July, August, September, October, November, and December 2015. Plaintiff's physical examinations were largely normal, and his treatment focused primarily on mental health issues, including distress about the discontinuation of his benefits.  In that regard, the ALJ noted that Plaintiff's psychiatrist, Dr. Nall, refused to issue an opinion with respect to Plaintiff's disability status.  Tr. 21, 22.  There is no reference to examination or treatment for knee pain in 2015.  In January 2016, his physical examination was normal.  In February, Plaintiff reported pain in his lower extremities.  Tr. 836.  However, in March, he said he felt "super" (Tr. 830), and in April 2016 he reported getting out of the house on a daily basis and walking 20-30 minutes at a time.  Tr. 826.  Again in May 2016, he said he was walking more and felt significantly better.  Tr. 822.  In June 2016, he complained of knee pain, and an x-ray showed callus formation with calcification related to an old injury but no acute osseous abnormality. Tr. 879.

Records throughout 2017 show ongoing treatment for Plaintiff's mental health issues and at one point for chest pain.  His physical examinations were normal, and there is no reference to a knee impairment.  In May 2017, Plaintiff was instructed to walk as much as he could without discomfort.  Tr. 1348.  Likewise throughout 2018, Plaintiff continued to be monitored primarily with respect to his mental health and sleep issues.  In March 2019, Plaintiff sought treatment for low back pain and underwent an MRI

7

revealing spondylosis, disc displacement, and spinal stenosis.  He received some relief from lumbar injections, and the doctor recommended ablation.  Tr. 1602-1608.

Based on the medical evidence, the ALJ concluded that Plaintiff's claims about the intensity, persistence, and limiting effects of his symptoms were not consistent with the record, and that Plaintiff had not received the type of medical treatment that one would expect for a totally disabled person.   Tr. 29.  The ALJ noted that Plaintiff's objective physical examinations were relatively normal, and multiple doctors noted that Plaintiff either refused to cooperate or made a poor effort.  *Id*.  The ALJ further noted that Plaintiff's medications were effective in controlling his symptoms when he was compliant, and there were no objective findings to support his physical complaints other than sleep apnea, which was being effectively managed.  The ALJ noted that Plaintiff was repeatedly instructed to increase his activity and lose weight through diet and exercise.  Tr. 30.  The ALJ inferred that Plaintiff's failure to follow medical advice suggested an inaccurate representation of his level of functioning and a lack of motivation to return to work.  *Id*.

Turning to the opinion evidence, the ALJ noted that, at the initial level, the state agency medical consultant, Dr. Frederic Simowitz, found normal objective findings, supporting a finding that Plaintiff's physical impairments were not severe (as of August 2015).  Tr. 30, 184.  On reconsideration (in October 2015), Dr. McGraw noted, "Exam is normal.  There are no functional impairments documented from any condition.  Overall this is physically nonsevere."  Tr. 30, 705.  Similarly, the state agency psychological consultant initially found that Plaintiff's mental impairments were not severe and

8

reflected only mild limitations in daily activities, social functioning, and concentration. Tr. 190-191.  On reconsideration, Dr. Smith found only mild limitations from Plaintiff's depression and no evidence of memory loss from his previous head injury, such that medical improvement and the cessation of benefits should be upheld.  Tr. 706-717.

The ALJ gave these opinions some weight as they were consistent with the record as a whole at that time.  However, the ALJ also noted that additional evidence received at the last hearing upon remand better supported the RFC. Tr. 30.  The ALJ then observed that, despite Plaintiff's claims of total disability, a full review of the record revealed no restrictions recommended by any treatment provider.  Tr. 31.

Next, the ALJ referred to the VE's testimony that a hypothetical person with Plaintiff's RFC and vocational factors (e.g., age, education, work experience) could perform certain unskilled jobs listed in the Dictionary of Occupational Titles (DOT) (e.g., dishwasher, laundry worker, hospital cleaner), which were available in significant numbers in the national economy.  Though the DOT does not address English language proficiency, learning by demonstration, or interpersonal interaction, the VE supplemented her testimony on those issues based on her knowledge of the labor market and her experience with employers and employees. Tr. 33, 172-173.

Ultimately, the ALJ found that Plaintiff's disability ended August 6, 2015, and he had not become disabled again since that date.  In his brief before this Court, Plaintiff asserts that the ALJ committed reversible error by failing to find that Plaintiff's knee conditions constitute a severe impairment.  Plaintiff asks that the Court reverse the ALJ's decision and enter an award of benefits.

## DISCUSSION

### Statutory Framework

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).

Once an individual becomes entitled to disability benefits, his continued entitlement to benefits must be reviewed periodically.  42 U.S.C. § 423(f)(1); 20 C.F.R. § 416.994(a).  The claimant has a continuing burden to demonstrate that he is disabled. *Detterman v. Berryhill*, 4:16 CV 1341 CDP, 2017 WL 2535705, at *2 (E.D. Mo. June 12, 2017) (citing *Nelson v. Sullivan,* 946 F.2d 1314, 1315 (8th Cir. 1991)).  The Commissioner may terminate benefits to a person previously adjudged to be disabled upon substantial evidence that the individual's condition has improved.  The continuing disability review process is governed by a sequential analysis contained in 20 C.F.R. § 404.1594(f).

> The regulations for determining whether a claimant's disability has ceased may involve up to eight steps in which the Commissioner must determine (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been a medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant

10

has the residual functional capacity to perform any of his past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

*Dixon v. Barnhart*, 324 F.3d 997, 1000–01 (8th Cir. 2003).

The regulations define medical improvement as:

[A]ny decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 416.994(b)(1)(i).  Thus, the "medical improvement" standard requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was found disabled and awarded benefits.  *Delph v. Astrue,* 538 F.3d 940, 945 (8th Cir. 2008).

"This sequential analysis for cessation of benefits includes the five steps to be followed in an initial disability determination."  *Id.* at 946 (citing 20 C.F.R. 416.920(a)(4).  Further, on appeal of an initial determination of cessation of disability, the Commission must also consider whether a claimant became disabled again, after the date of cessation, due to the worsening of an existing impairment or the onset of a new impairment.  SSR 13-3p.  Thus, as Plaintiff raises the existence of an impairment not considered in his previous application and renewal, the Court also notes the following five-step statutory framework applicable to initial determinations.

The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The

Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.  *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden.  *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

### Standard of Review

This Court's role on judicial review is to review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).  The court "may not reverse merely because substantial evidence would support a contrary outcome.

Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted).  A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.  If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted).  Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*  The Court "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

**Analysis**

As the sole issue here, Plaintiff asserts that the ALJ committed reversible error by failing to determine that his knees presented a severe impairment.  Within the framework of the Court's standard of review, the Court understands this as a challenge to the sufficiency of the evidence supporting the ALJ's decision.

The agency considers an individual's statements about the intensity, persistence, and limiting effects of symptoms and evaluates whether those statements are consistent with objective medical evidence and the other evidence.  SSR 16-3p.  An impairment must result from a physiological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1521.  A physical

impairment must be established by an acceptable medical source and not simply a claimant's statements. *Id.*  An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); 20 C.F.R §§ 404.1520(c), 416.920(c).  "Basic work activities" means the ability and aptitude to do most jobs, including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522(b).  Although severity is not an onerous requirement, it is also "not a toothless standard." *Kirby*, 500 F.3d at 708.

Mindful of these standards, the Court finds no error in the ALJ's failure to deem Plaintiff's knee problems a severe impairment.  As an initial matter, Plaintiff did not even identify his knee pain as a limiting medical condition when he completed his continuing disability report in May 2015. Tr. 445.  Although he reported some knee pain to his medical providers in 2016, he also reported going for walks up to 20-30 minutes per day. Tr. 826.  At the hearing in December 2016, he said that he only took Motrin as needed for knee pain. Tr. 111.  The only diagnostic evidence in the record, an x-ray in 2016, shows some calcification from his 2000 injury but otherwise no acute osseous abnormality.  Tr. 879.  His physical examinations were largely normal throughout the relevant period.  In May 2017, Plaintiff was encouraged to continue walking. Tr. 1348.  An examination as recent at March 2019 showed normal strength and sensation in the lower extremities.  Tr.

14

1603-1604.  At the last hearing, in March 2019, Plaintiff claimed some pain when standing and walking, but he also testified that he went for walks.  Tr. 147, 151, 155.

There is simply no objective clinical or diagnostic evidence or any medical opinion evidence in the record indicating that Plaintiff suffers from a *severe* knee impairment according to the applicable legal standards set forth above.  On the contrary, the only opinion evidence in the record confirms that Plaintiff has no severe physical impairments whatsoever.  Plaintiff's subjective complaints alone are insufficient.  20 C.F.R. § 416.921.  *See e.g., McCoy v. Astrue*, 648 F.3d 605 (8th Cir. 2011) (denying benefits to a war veteran with PTSD and hand tremors where medical evidence conflicted, and discounting complaints of back pain in light of daily activities).

Upon review of the record, the Court finds no error by the ALJ in failing to identify a severe impairment with respect to Plaintiff's knees.  As a result, Plaintiff's related argument that the ALJ erred in omitting this impairment from the hypothetical posed to the VE also fails.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.  A separate Judgment shall accompany this Memorandum and Order.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 1st day of March 2021.

15